ELIAS *v.* FAUSETT & COMPANY, INC.

5-503                                   272 S. W. 2d 697

Opinion delivered November 22, 1954.

*Carl Langston,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

GRIFFIN SMITH, Chief Justice. The question is whether, through fraud, appellant Elias was deprived of 87 feet of land he claimed should have been included when he purchased a residence on a tract thought by him to be 180 feet deep with a frontage of 150 feet.[1]

D. A. White as owner listed with Fausett & Company "House No.—141 Plainview [Circle]. Lot No.—W ½ 17, all 18, block 1." When the sale-purchase was consummated Elias assumed payment of a balance of $8,400 secured by deed of trust, carried by New York Life Insurance Co. under FHA guarantees.

White's listing is dated August 13, 1952, and the contract was subject to the ordinary commission of 5%.

Elias alleges in his complaint that on or about Sept. 27, 1952, he authorized the real estate agency to make an offer to White. He also asserts that Fausett's agent, Lyale F. Marr, represented to him that 141 Plainview Circle included the 87 feet east of the residence.

White testified that he and his wife, after listing the property with Fausett and through coöperation with the realtors, tentatively sold to a man named Davis, but the deal fell through. White then signed a contract to sell to Fausett's agent, Marr. In addition to the New York Life obligation, White owed $2,500 he was anxious to pay.

White's deed to Marr is dated Sept. 26, 1952, and filed for record three days later. The sale price was $10,750 and the description included the eastern 87 feet Elias now claims was fraudulently withheld from him. Fausett & Company paid White's $2,500 obligation to Argenta Loan Company.

October 2, 1952, Marr sold to Elias the west 63 feet of lot 18, block 1, on which the brick residence was situated. Fausett and Marr contend that this sale was the

---

[1] In testimony the lots in Block 1 are referred to as being 200 feet in depth.

result of an authorization by Elias dated Sept. 27th whereby $2,350 was to be paid in cash and Elias was to assume the trust deed balance of $8,400. In the Sept. 27th writing Elias designated Fausett & Co. as his agent to purchase property described as 141 Plainview Circle, Park Hill. A good faith payment of $250 was made by check. A second payment ($2,150) was made Oct. 1.

On Sept. 26th—a date corresponding with White's deed,—Marr and his wife executed a deed of trust covering the west 63 feet of lot 18, block 1.

November 12, 1952, Elias gave Fausett & Co. an exclusive listing with authority to sell the property he had purchased of Marr. The price asked was $11,750 and the size of the lot is given as 63x180 feet, "141 Plainview." Terms were $3,375 cash, balance payable at $68.38 per month. A satisfactory offer was made by Roy New, who moved into the house before making all of the down payment for which he was obligated. New contended that he had been deceived regarding the area contemplated and refused to carry out the contract; whereupon Elias, on January 30th, 1953, filed suit for specific performance. New counter-claimed, alleging in detail that Marr had misrepresented the boundaries. Contentions by New are in all substantial respects similar to those now advanced by Elias. Marr and his wife (Oct. 6, 1952) sold the east 87 feet to Lamar H. Smith for $1,150.

Details of this settlement are not important except that the threatened litigation and controversy preceding dismissal of the suit were of a nature that could not be overlooked by Elias. In short, he must have known that New's rescission was induced through failure of the seller to include the front footage White had sold to Marr. The compromise was signed by New, Elias, Marr, and Fausett March 17, 1953, and it was executed in Fausett's office. Elias retained an executed copy. New paid rent at the rate of $75 per month for the time he occupied the house and Elias received a monthly rental of $100. Fausett paid the difference. In the meantime,

with all essential facts at hand, Elias again listed the property with Fausett, to be sold for $11,750—the amount formerly agreed upon. The written evidence of this listing is dated March 14, 1953, three days before the settlement with New was made. Again the land was described as 63x180-ft.

It is contended by Elias that some of the figures were not filled in when he signed the sales-commission agreement; but even so, the chancellor was convinced that any dissension respecting Fausett's action in permitting Marr to purchase from White and then sell less land to appellant had been waived; and the suit filed Sept. 2, 1953, by Elias must be viewed in the light of his preceding conduct and actions.

Affirmed.